## Birkel Estate

*John B. O'Brien*, for exceptants.

*Robert S. Taylor, Jr.*, for accountant.

WOODRING, J., March 4, 1957.—These are exceptions to the trustees' fifth account in the estate of Benedict H. Birkel. Decedent died May 27, 1934, seized of 132 pieces of real estate of which there remain 84 properties. The residuary clause of the will gives the remainder of the estate in trust until the death of the survivor of decedent's six children. Three of the children, Victoria, Rose and Anna qualified, have been and are now serving, as trustees. Four of the children, the three who are trustees and their sister, Mary, for whom the First National Bank and Trust Company of Bethlehem has been appointed guardian, are living. The two remaining children, Emil and Anthony, are deceased, and it is their children who are the exceptants. The exceptions are set forth in seven numbered paragraphs, but the latter four have been withdrawn and we need consider only exceptions 1, 2 and 3.

### Exception No. 1

"1. Exceptants except to the payment of commissions made by the trustees to themselves which payments are in excess of the amount to which they are entitled. (Exhibit VIII-P. 59; Schedule B-1, P. 11; Exhibit VI-P. 53, 54, 55, 56, 57)."

The items referred to in Exhibit No. 1,
include:

Trustees' commission, P. 59 ......... $ 8,150.87
Rose Dauchy, bookkeeping services .... 600.00*
George J. Frantz, Jr., bookkeeping
    services ........................ 960.00
George J. Frantz, Sr., commissions on
    collection of rentals .............. 4,511.58

    Total ................... $14,222.45

Exceptants contend that because of the expense for
rent collections, bookkeeping services and office facili-
ties, the trustees are not entitled to a commission of five
percent but rather that their commission should be
reduced to two and one-half percent. With this con-
tention we do not agree.

The income personalty debits amount to $2,231.93,
and the income real estate debits are $169,745.67, or
a total income debit of $171,977.60. The total charges,
above set forth, comprise approximately eight and
one-quarter percent of the total income debits which
in our judgment is not excessive either in fact or law.

The evidence discloses that whereas the trustees
formerly maintained a full time superintendent and
contracted for the necessary repairs and maintenance
of the many pieces of real estate, they now exercise
complete management over the properties. For their
services, which we deem unnecessary to set forth in
detail, we are convinced that five percent of the in-

---

* The designation of "Bookkeeping Services" for this item is a
misnomer. The semiannual charge of $100 is in the nature of pay-
ment for office space, telephone and other office expenses. Prior to
the present accounting period these facilities were provided in a
separate office and storage building at 106 E. 4th Street, Bethlehem.
During the accounting period, Mrs. Dauchy provided these services,
and it is not improbable that at the modest cost of $100 per six
months the estate effected a saving over the previous arrangement.

come debits is not excessive compensation. We know and, therefore, take cognizance of the fact that the schedule of compensation of the Easton Real Estate Board provides 10 percent of the income for real estate management. While this is not conclusive, it is in the nature of a measuring device to test the reasonableness of the trustees' charges. The testimony of the trustees convinces us that for the responsibility which is theirs and the management which they have performed, they are entitled to the sum of $8,150, which amount is less than five percent of the amount of the rents which were collected.

Some of the decided cases which have considered and passed upon the question of compensation for trustees and agents are: Romberger's Estate, 39 D. & C. 604, in which a charge of five percent for the agent was approved; Casely's Estate, 23 Pa. Superior Ct. 646, in which the court allowed five percent for the agent plus five percent for the trustees; Gelbach's Estate, 29 Pa. Superior Ct. 446, five percent for agent and five percent for trustee; Goldbeck's Estate, 17 Dist. R. 373, three percent for agent and five percent for trustees.

Another phase of the first exception is that the trustees charged a five percent commission on the gross sale of one piece of real estate. The property was sold for $3,500, and the trustees took a commission for negotiating and effecting the sale of five percent, or $175. The record reveals that no broker was employed. We cannot find that such charge was either unearned or excessive.

### Exception No. 2

"2. Exceptants except to the failure of the account to set forth the amount of income lost due to the defalcations of Floyd P. Barrall, the rental agent chosen by the trustees, and requests the Court to surcharge the said trustees the amount of such loss."

To summarize this claim, Barrall was employed, prior to October, 1951, as a collector of rents for the trustees. The trustees discovered a defalcation in his accounts on November 11, 1951, in the sum of $3,659. The trustees were successful in recovering from Barrall $1,080 by way of bank loans, sale of his car, etc. An additional $400 was recovered out of his earnings and through the sale of a Prestolite torch. The balance of the defalcation was $2,179. Trustees, fortunately, had taken out an indemnity policy in the sum of $2,500, which amount was paid on account of the defalcation. The policy contained a clause, however, which provided for pro rata division of recoveries. After such prorationment the net loss to the estate was $668.40. Exceptants contend that trustees should be surcharged by that amount because of their failure to adequately insure their collector against defalcations.

The law in such matters does not make a trustee an insurer of the funds which come into his hands. He, in addition to being scrupulously honest, must only exercise good faith and reasonable care and diligence. He should not be surcharged unless he has violated his responsibilities by dishonest or careless dealings. Scott on Trusts, §225, p. 1644, reads: ". . . a trustee . . . is not liable to the beneficiaries for losses resulting from the improper conduct of the agent, unless the trustee is himself guilty of a breach of trust . . . if in the administration of the trust the trustee properly employs an agent who negligently loses trust property entrusted to him or misappropriates such property or otherwise causes a loss to the trust estate, the trustee is not liable to the beneficiaries for the loss". See also Hofmann's Estate, 64 D. & C. 575, and cases therein cited.

In the instant case the testimony discloses that Barrall was employed only after careful investigation and upon satisfactory references. He was bonded in the

amount of $2,500, which was greatly in excess of any one day's rental collection. He was carefully instructed to make daily deposits of the collections, which deposit was in the name of the estate and against which only the trustees could withdraw. He was directed to produce duplicate deposit slips for the prior month's collection at a regular meeting with the trustees which was held the second Wednesday of each month. At said meeting he was required to give a detailed rent statement for the prior month. The rent statement was prepared monthly by a secretary in the trustees' attorney's office from Mr. Barrall's individual rent cards. A comparison of the rent statements with the duplicate deposit slips showed them to be correct. The trustees made independent audits of the tenants' accounts at various times by letters asking the tenants to verify their respective accounts. The trustees acted with promptness and diligence when the defalcation was discovered. Under these facts, and the pertinent law, the trustees should not be visited with reprisal because of their agent's infidelity and defalcation.

### Exception No. 3

"3. The exceptants except to the payment of all of the insurance premiums out of income. (Exhibit III —P. 49, 50)."

The insurance premiums for the accounting period amount to $3,196.25. Exceptants contend that the policies thus provided afforded protection to the remaindermen as well as the life tenants and that, therefore, the cost of the premiums should be pro rated between life tenants and remaindermen, and should not be charged in their entirety against income. Exceptants rely on the provisions of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3471, which reads, in part:

"12 (1) All ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes . . . water rates, premiums on insurance taken upon the estates of both tenant and remaindermen, interest . . . ordinary repairs . . . shall be paid out of income or paid out of principal or apportioned between income and principal as the court or the testator or creator of the trust may direct".

The 1945 Act was repealed by the Principal and Income Act of July 3, 1947, P. L. 1283, sec. 11, 20 PS §3470.11, which reads, in part:

"(1) All ordinary expenses and charges, incurred in connection with the trust estate or with its administration and management, shall be paid out of income. . . ."

The question, therefore, reduced to its simplest terms is: "Are insurance premiums ordinary expenses in the administration of a trust?" We are convinced that they are.

It appears that insurance premiums to protect the trust assets have been considered ordinary trust expenses, and have been so considered with such universality that there are few reported Pennsylvania cases on the subject. The question was well considered in the case of Ash v. Ash, 126 N. J. Eq. 531, 10 A. 2d 150 (1940). A portion of the opinion reads:

". . . it is, . . . in accord with common experience to suppose that the testator, when he created a trust in his rather extensive residuary estate and expressly authorized his trustees to manage, control and finance it as a single trust, and to pay the 'net income' therefrom to the equitable life tenant, contemplated that the cost of insurance on the real estate so held in trust would, like taxes and repairs, be a charge necessary for the maintenance of the estate, and so to be borne by the life tenant.

"Ordinary business prudence requires that trustees effect insurance upon trust real estate and it has been held that the costs of such insurance are to be paid out of income as proper expenses and charges concerning matters within the scope of the trustees' authority. Perrine v. Newell, 49 N. J. Eq. 57.

"In 26 R.C.L. 1382, §246, it is stated as the general rule that 'taxes and other necessary expenses incurred in the administration of real estate held in trust are chargeable to the income of the trust property, and are not to be paid out of capital', and it is further stated that 'this rule applies to insurance premiums, interest on mortgages, repairs, the payment of premiums on the bonds of the trustees, and all other charges incidental to the management of the trust'.

"In accord with this view is section 233, Restatement of the Law of Trusts, which states:

" '(1) Except as otherwise provided by the terms of the trust, if property is held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary (a) the former beneficiary is entitled to, and only to, the net income during such period; and (b) the latter beneficiary is entitled to the principal on the expiration of such period.

" '(2) The net income is ascertained by subtracting expenditures allowable to income from receipts allocable to income.'

"In Comment 'E' to this same section, under the heading 'Current Expenses', it is further stated:

" 'Ordinary current expenses in connection with the administration and management of the trust are payable out of income. These include regularly recurring taxes assessed against any portion of the principal, water rates, *premiums on insurance against fire or other casualty*, interest on mortgages and other in-

debtedness, ordinary repairs and the trustees' commissions computed upon income'. (Italics mine.)

"In Kearney v. Kearney, 17 N. J. Eq. 59, affirmed [17 N. J. Eq. 504], cited by complainants, testator devised a life estate in his residence to his wife, remainder over to his son. No trust was involved, and the court held that the life tenant and the remainderman should each pay for the insurance on their respective interests. This case is distinguishable from the present case because it involved no trust estate, as also are Endicott v. Endicott, 41 N. J. Eq. 93, and Rogers v. Genung, 76 Atl. 233, for the same reason."

One of the few Pennsylvania cases which might appear to be in conflict with the Ash case is that of Farber's Estate, 70 Pa. Superior Ct. 81. That case, however, like the Kearney case, supra, is one in which there was a life estate followed by a remainder. In that case, or where there are successive life estates, each of the several owners may be required to contribute their proportionate share toward the cost of the insurance premiums. In the case at bar, however, the entire title has descended to the trustees. They are the legal owners of the entire estate and as such it is their duty to protect the estate with adequate insurance, the premiums for which are ordinary expenses and should be charged against income.

Scott on Trusts, §233.2, page 1752, states:

"It would seem that premiums paid for insurance against fire or other casualty are of this character (regularly recurring or ordinary expenses) and are payable out of income. There is some authority, however, to the effect that such premiums are payable partly out of income and partly out of principal. It is believed, nevertheless, that the courts so holding have been influenced by the situation where no trust is created and there are successive legal estates. In

248

that case the life tenant and the remainderman have separate interests in the property and each must bear the expense of any insurance which he obtains with respect to his own interest. In the case of a trust, however, it is the duty of the trustee to preserve the trust property and the expense of so doing is a regularly recurring expense which should be borne by income, since otherwise the principal will necessarily tend to diminish in value". See also Warfel's Estate, 22 Erie 190; McFadden Estate, 25 Del. Co. 442, and Aul's Estate, 68 Pitts. L. J. 753.

### Order

And now, to wit, March 4, 1957, it is hereby adjudged, ordered and decreed that the exceptions to the fifth account of the trustees under the will of Benedict H. Birkel be and the same are denied and dismissed, and the acount is confirmed absolutely unless exceptions be filed thereto within 10 days from the date hereof.